IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MARTIN L. BLACKWELL,        :
                          :
              Plaintiff,   :
                          :
             v.         :   Case No. 5:19-cv-00002-MTT-CHW
                          :
ALETA GARDNER,           :
                          :   Proceedings Under 42 U.S.C. § 1983
              Defendant.  :   Before the U.S. Magistrate Judge
_____:

## ORDER AND RECOMMENDATION

Defendant Aleta Gardner has moved to dismiss Plaintiff's Eighth Amendment deliberate indifference to medical needs claim and First Amendment retaliation claim, arguing that Plaintiff failed to exhaust his administrative remedies before filing suit in federal court. (Doc. 33). Because Plaintiff failed to exhaust his claims against Defendant Gardner prior to the commencement of this suit, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED**.

Also before the Court is Plaintiff's motion for leave to file an amended complaint, in which Plaintiff seeks to add both deliberate indifference and retaliation claims against two nurses concerning his medical treatment during a number of visits to Augusta State Medical Prison in 2019. (Doc. 36). Since Plaintiff has already amended his complaint as a matter of course, *see* (Docs. 10, 32), any further amendments may be granted only with the opposing party's written consent, which in this case is not forthcoming, *see* (Doc. 38), or the Court's leave, which should be given freely when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). A proposed amendment may be denied, however, under circumstances evincing prejudice to the non-movant, undue

delay, or futility. *See Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999). Plaintiff's new claims, which are premised on an incident in which Plaintiff was allegedly forced to sleep on a treatment room floor due to a "broken" bed, are wholly unrelated to the claims raised in the operative complaint in this action and do not implicate Defendant Gardner in any way. The addition of new claims involving new facts against new defendants over a year after commencement of the action, and with a (meritorious) dispositive motion pending, would unduly prejudice Defendant Gardner and would not be in the interests of justice or judicial economy. Accordingly, leave to amend is **DENIED**.

## I.      BACKGROUND

Plaintiff Blackwell, a state inmate housed in Washington State Prison, suffers from several medical conditions, including a hiatal hernia, heartburn, an inflamed throat and stomach, and psoriasis. (Am. Compl., Doc. 32, pp. 5–7).[1] Plaintiff has also overcome oral cancer. (*Id.*, p. 5). Plaintiff alleges that he was sent to Augusta State Medical Prison on June 12, 2018, to consult with a cancer specialist regarding his recent PET scan. (*Id.*, p. 6). Upon his return to Washington State Prison in September 2018, Plaintiff discovered that Defendant Gardner, a physician at the facility, had "t[aken] all [his] medication," including his Ensure, omeprazole, diet snack, and allergy medication, and refused to refill his psoriasis medication. (*Id.*). Plaintiff claims that Dr. Gardner removed his medication in retaliation for the two grievances Plaintiff had previously filed against her. (*Id.*).

## II.      ANALYSIS

Plaintiff's claims should be dismissed for failure to exhaust. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a),[2] requires a prisoner, as a "precondition to an

---

[1] Plaintiff's amended complaint is the operative complaint in this case. *See* (O&R, Doc. 13, pp. 1–2).

[2] The PLRA provides, "No action shall be brought with respect to prison conditions under [42 U.S.C. §

adjudication on the merits," *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008), "to exhaust all administrative remedies before filing his § 1983 suit," *Whatley v. Smith*, 898 F.3d 1072, 1074 (11th Cir. 2018); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000). Therefore, even if the prisoner exhausted his administrative remedies after filing his complaint, the claims not exhausted prior to commencement of the action must be dismissed. *See Smith v. Terry*, 491 F. App'x 81, 83–84 (11th Cir. 2012); *Terrell v. Davis*, No. 5:17-CV-441-MTT-CHW, 2018 WL 5624723, at *2 (M.D. Ga. July 27, 2018), *report and recommendation adopted*, 2018 WL 4502329 (M.D. Ga. Sept. 20, 2018).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (*quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In considering exhaustion, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376.

To determine whether the plaintiff properly exhausted his claims, courts in the Eleventh Circuit follow the two-step process mandated by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). Under *Turner*'s first step, the court must look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Id.* at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the

---

1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust the available administrative remedies. *Id.*

Plaintiff's claims are subject to dismissal at step one of *Turner*. Plaintiff stated in his amended complaint that he filed two grievances against Dr. Gardner on or around June 12, 2018. (Doc. 32, p. 6). Dr. Gardner allegedly deprived Plaintiff of his medication in September 2018, approximately three months *after* Plaintiff submitted his grievances. Therefore, Plaintiff could not, as a temporal matter, have possibly addressed his issues with Dr. Gardner in those grievances. In his response to Defendant's motion to dismiss, Plaintiff cited to grievances filed in September 2017 and March 2018. (Doc. 37). Again, neither of those grievances could have possibly addressed the September 2018 incident, since it was yet to occur. Therefore, based on Plaintiff's account of the facts, which is accepted as true, *see Turner*, 541 F.3d at 1082, Plaintiff did not first present his complaints to the prison administration before petitioning this Court for relief. Since Plaintiff failed to exhaust his administrative remedies, both his deliberate indifference and retaliation claims should be dismissed.

Plaintiff's claim is also subject to dismissal at step two of *Turner*. Defendant's uncontested description of the Georgia Department of Corrections grievance process, as stated in an affidavit provided by the grievance coordinator at Washington State Prison, Sebrena Grant, is as follows:

> The grievance procedure at WSP has two (2) steps. First, the inmate files the Original Grievance. Second, the inmate may file an appeal with the Central Office of Appeal. The Grievance [Standard Operating Procedures] specifically details and outlines the process, and timelines, for each of the two steps. . . . Inmates must submit their grievance no later than ten (10) calendar days from the date they knew, or should have known, of the facts giving rise to their grievance. . . . The Grievance Coordinator screens

the grievance before forwarding it to the Warden for the Warden's review and decision. . . .

Once the grievance passes the screening, it is assigned to a staff member to thoroughly investigate. The investigator will complete a report, attaching all relevant documentations, and submit to the Grievance Coordinator. The Grievance Coordinator then forwards that report to the Warden. The Warden, after reviewing the report(s), must issue a decision in writing and must state the reasons for said decision. The Grievance Counselor must then give the Warden's written decision to the inmate. . . .

The Warden has forty (40) calendar days from the date the inmate submitted his grievance to the counselor to deliver the decision to the inmate. A ten day extension may be granted, but only once. . . . Inmates have seven (7) calendar days from the date they receive the response to the original grievance to file a Central Office Appeal. . . . The Commissioner or their designee has one hundred (100) calendar days after receipt of the Grievance Appeal to deliver a decision to the inmate. . . . The grievance process is exhausted when the Grievance Counselor notifies the detainee of the written response from the Commissioner or their designee.

(Doc. 33-2, ¶¶ 8–15); *see also* (GDC Statewide Grievance Procedure, Doc. 33-3).

Plaintiff's grievance history shows that he has filed ten grievances during his time in confinement. (Doc. 33-5). Of those ten grievances, only four are relevant, since they were filed after Plaintiff's medication was allegedly removed or discontinued in September 2018. Two of those grievances, both of which were filed in December 2018, related to alleged violations concerning officials' handling of Plaintiff's legal mail, and are therefore irrelevant to the claims against Dr. Gardner. (Docs. 33-8, 33-9).

The other two grievances, which were filed on June 24 and November 12, 2019, respectively, are irrelevant for two reasons. First, although the grievances addressed alleged incidents of deliberate indifference to Plaintiff's medical needs, neither of the grievances concerned Dr. Gardner. Plaintiff's June 2019 grievance concerned an incident in which Plaintiff was forced to sleep on the floor of a medical treatment room because of a "broken" bed. (Doc. 37-7, p. 2). In his November 2019 grievance, Plaintiff complained that a nurse refused to provide Plaintiff with pain medication and antibiotics. (Doc. 37-8, p. 2). Because the content of the 2019 grievances did not concern Dr. Gardner or the claims against her, they are irrelevant for purposes

5

of the instant action. Furthermore, both 2019 grievances were submitted after Plaintiff commenced this action in federal court. As stated above, Plaintiff must "exhaust all administrative remedies *before* filing his § 1983 suit." *Whatley v. Smith*, 898 F.3d 1072, 1074 (11th Cir. 2018) (emphasis added). Plaintiff filed suit on December 17, 2018.[3] (Doc. 1). Therefore, even if Plaintiff's June and November 2019 grievances were relevant to this case, because they were filed after commencement of this action, they cannot cure the exhaustion defect.

In sum, because Plaintiff failed to exhaust his administrative remedies as to the claims against Defendant Gardner, those claims are subject to dismissal under either step of *Turner v. Burnside*.

In addition, to the extent that Plaintiff has brought claims for monetary damages against Dr. Gardner in her official capacity, those claims are barred by the Eleventh Amendment, because Georgia, as the real party in interest, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), has not consented to suit, *see* Ga. Const. art. I, § 2, para. IX(f) ("No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.").

Plaintiff also requests an injunction "to be treated by another doctor" and "to be retaliation free." (Doc. 32, p. 8). The latter request is impermissible, as it amounts to no more than an "obey the law" injunction. *See Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006). As to the former request, it is neither narrowly drawn nor the least intrusive means to correct any

---

[3] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. Absent evidence to the contrary, [courts in the Eleventh Circuit] assume that [the prisoner's filing] was delivered to prison authorities the day he signed it." *Daker v. Comm'r, Georgia Dep't of Corr.*, 820 F.3d 1278, 1286 (11th Cir. 2016) (first alteration added) (internal quotation marks and citations omitted).

violation on Dr. Gardner's part. "Under the Prison Litigation Reform Act (PLRA), a court cannot order prospective relief addressing prison conditions unless it 'finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.'" *Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1251 (M.D. Ala. 2019) (quoting 18 U.S.C. § 3626(a)(1)(A)). If the Court were to grant Plaintiff's request to be treated by a different physician, the Court would be forced to intervene in state prison administration policy regarding the allocation of medical resources at Washington State Prison. Such an order would be overly intrusive and overly broad. Therefore, should the Recommendation as to exhaustion be rejected, Plaintiff's requests for injunctive relief should be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies before filing the instant suit, it is **RECOMMENDED** that Defendant's motion to dismiss (Doc. 33) be **GRANTED** and Plaintiff's claims in this action be **DISMISSED without prejudice**. Upon adoption of this Recommendation, Plaintiff will have no remaining claims in this action. In addition, for the reasons stated herein, it is **ORDERED** that Plaintiff's motion for leave to file an amended complaint (Doc. 36) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party

failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 6th day of February, 2020.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge